(No. 75-72, 83—

TALSMA BUILDERS, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 29, 1976.*

THOMAS, WALLACE, FEEHAN and BAZON, Ltd., Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; RICHARD J. GROSSMAN, Assistant Attorney General, of Counsel, for Respondent.

PER CURIAM.

These claims were instituted by Claimant for damages for Respondent's breach of a contract for the construction of Joliet Junior College, Joliet, Illinois. Case No. 75-CC-72 is predicated upon alleged misrepresentation by Respondent of the character of the subsoil at the building site, and Case No. 75-CC-83 is predicated upon damages allegedly suffered by Claimant as a result of delays on the part of Respondent in issuing corrected designs and specifications following the discovery of the true nature of the subsoil. After a pretrial hearing conducted by the commissioner to whom the cases were assigned, Respondent conceded the merits of Case No. 75-CC-72 and entered into a written stipulation of facts relative thereto. The parties waived the filing of briefs and the undisputed facts are as follows:

On May 8, 1972, Talsma Builders, Inc., of Alsip, Illinois, entered into a contract with the Illinois Building Authority for the general construction work on the

construction of the Joliet Junior College, Joliet, Illinois, phase IB. By letter from the Illinois Building Authority, dated June 23, 1972, Claimant was notified to commence work on June 28, 1972. Bids for the contract were opened on March 30, 1972, preceding, and by June 28, 1972, Claimant had already complained to the Illinois Building Authority and to Caudill, Rowlett and Scott (project architects) because of the lengthy delay between the opening of the bids, the awarding of the contract, and the notice to commence work. The gist of Claimant's complaint was that its bid, being $250,000.00 lower than the second lowest bid, was a very tight figure and was conditioned upon there being no delays in getting started on the job and getting it done.

Immediately upon being notified to commence work, Claimant cleared the site and started to excavate. Subsurface rock was encountered July 10, 1972. This rock was not revealed by the topographical material furnished by the architect for use by Claimant in preparing its bid, nor had the architect considered this rock in preparing his plans and drawings. Immediately thereafter representatives of the architect came to the site from Texas to consider the problem. Because of the rock it was necessary for the architect to redesign grading plans, retaining walls, footings, sidewalks, a parking lot, a courtyard area, and to eliminate all storm sewers. Although the rock was encountered early in July, 1972, the architect did not complete redesign of the project until the middle of August, 1972, and Claimant was not instructed to proceed with the extra excavation and the revised construction until approximately August 24, 1972, thus being subjected to obvious delays through no fault of its own.

In the meantime, by PA 77-1995, effective July 10, 1972, the Illinois Legislature had created the Capital

Development Board. Pursuant to the provisions of this statute, on September 22, 1972, the Illinois Building Authority assigned Claimant's contract to the Capital Development Board, and the latter body took over the contract and the project.

Upon taking over the project, the Capital Development Board conducted its own investigation of the problems that had resulted from the sub-surface rock, and paragraph 4 of the joint stipulation entered into between Claimant, the Capital Development Board, and the Attorney General of Illinois, is as follows:

4. That as a result of further investigation by the Capital Development Board it was determined that the extra rock removal work was necessitated by the negligence of the architectural firm of Caudill, Rowlett and Scott in its erroneous testing of sub-surface conditions and preparation of the drawings and specifications for phase 1B of the Joliet Junior College project.

This Court on various occasions in the past has awarded damages to Claimants injured by breach of construction contracts, where Respondent's breach has consisted of unreasonable delays, changes of design, and misrepresentation of topographical conditions, resulting in increased costs to the contractor.

In *J. L. Simmons Company, Inc. v. State of Illinois, 21 Ill.Ct.Cl. 503,* the Court awarded damages to the contractor-Claimant where the architectural drawings and test borings did not show the true character of the subsoil. In *Simmons,* this Court discusses an older Court of Claims case, *Arcole Construction Company v. State, 11 Ill.Ct.Cl. 423* as follows:

Claimant, Arcole Construction Company, was awarded a contract to repave Roosevelt Avenue in the City of Chicago. Plans and specifications were prepared by the State, and through oversight no reference was made to that portion of the road bed containing abandoned street rail ties, which were imbedded in concrete, and not visible through ordinary examination. The contractor was unable to remove this portion of the highway with power shovels, but had to resort to air hammers to chip it out. The extra expense amounted to $24,944.85, and a claim was made for this amount. The Court ruled that where plans and specifications are prepared by the owner, and there is a *material misrepresentation* therein, and as a result of such misrep-

resentation, the contractor is misled to his damage, he is entitled to recover the damages so sustained. An award of $23,092.09 was granted.

After considering the stipulation of the parties and the other evidence before the Court, it is the finding of the Court in the instant case that the plans and specifications and topographical information prepared by Respondent's architects contained a material misrepresentation as to the nature of the subsoil at the project site, and that as a result of such misrepresentation the Claimant was misled to his damage.

The measure of Claimant's damages and the amount is not in question. As set forth in the Departmental Report heretofore filed herein by Respondent:

Capital Development Board staff have worked with the Architect and Contractor to review the proposals for additional work. Unit prices have never been in question as they were included in the original bidding proposal. Quantities were verified by the Construction Testing Firm, Raamot and O'Brien. Capital Development Board staff concur with the excess amount of rock removed by blasting, ramhoe, hand, and jackhammer procedures . . . . It is therefore, recommended by the Capital Development Board staff that this claim in the amount of $107,869.00 be approved.

Claimant's cost increases are itemized in Exhibit D attached to the complaint filed in case No. 75-CC-72. They total $121,732.00, less credits to the State in the amount of $13,863.00, resulting in a net claim of $107,869.00 It is hereby ordered that the sum of One Hundred Seven Thousand Eight Hundred and Sixty-Nine Dollars ($107,869.00) be awarded to Claimant under case number 75-CC-72 in full satisfaction of any and all claims presented to the State of Illinois under case numbers 75-CC-72 and 75-CC-83 and that case number 75-CC-83 is hereby dismissed with prejudice.